LUIN K. GRAVES, Appellant, v. EZEKIEL CLARK.

**Deposition:** CORRECTION OF AFFIDAVIT. A deposition which has been filed cannot be attacked by affidavit for the purpose of correcting the same by including certain statements alleged to have been omitted by the stenographer.

**Stiiking Pleading:** HARMLESS ERROR. Error, if any, in refusing to strike from the files, an answer denying an allegation of the petition that certain letters constitute an agreement in writing, is harmless, where the existence of such letters is not disputed; as the pleading of them as constituting a contract is a competent allegation of nothing but the fact of their existence.

SAME. A plea that parol evidence is not admissible to prove the contract as alleged in the petition, states a mere legal conclusion, and it is harmless to refuse striking it.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

FRIDAY, JANUARY 22, 1897.

THE petition shows that the plaintiff is a son of J. K. Graves; that in April or May, 1889, J. K. Graves was the owner of twenty-six thousand four hundred dollars of the capital stock of the Western Union Fuel Company, and twenty-five thousand dollars of the capital stock of the American Coal Company, which stock was at that time in the possession of the First National Bank of Chicago, Ill., as collateral security to notes executed by Graves to said bank; that the defendant, Clark, at the request of J. K. Graves, advanced the money to take up such securities, under an oral agreement with said Graves that they should be taken up for him, for the use of his son, the plaintiff herein; that in pursuance of said agreement J. K. Graves negotiated the transfer of said stock from the bank to the defendant, for which the defendant paid

the sum of thirteen thousand dollars. It further appears from the petition that J. K. Graves requested the defendant to loan to and advance for said Graves a sum of money sufficient to purchase from the receiver of the Commercial National Bank of Dubuque, Iowa, a claim held by said receiver against one H. W. McNeill, for which thirty thousand dollars of the capital stock of the American Coal Company was held as security, which defendant agreed to do; that pursuant to such agreement, J. K. Graves conducted negotiations for the purchase of said claim in the name of the defendant, Clark, for the sum of three thousand eight hundred dollars; that said stock had been attached in a suit by the Commercial National Bank, and that Graves purchased the claim, on which the attachment issued, for the sum of four thousand dollars, which, added to the other amount, made seven thousand eight hundred dollars, which the defendant paid, and the claims were transferred to him, to be held for the use and benefit of J. K. Graves, and as security for the payment by Graves of the several sums advanced as set forth in the petition. It further appears from the petition, that the defendant expended for Graves, for attorney's fees and costs, an amount not known definitely enough to be stated. It also appears, that defendant has received from the American Coal Company, and from the purchase of that McNeill claim, a large sum of money, and that all the interest of J. K. Graves has been assigned, in writing, to the plaintiff. The petition asks that an account be taken, and, after deducting the amount of defendant's advancements, with interest, from the amounts received, from such stock and the claim, that plaintiff have judgment for the balance, and a decree for the transfer of said stock to him, or judgment for its value.

A first amendment to the petition is as to an assignment by the bank of the stock to one Proctor,

on its own account, and is not important for the purposes of the case. A second amendment was filed November 7, 1895, and avers that, as to the purchase of the McNeill claim, there was a further agreement in writing, consisting of letters, as follows:

"Dubuque, July 15, 1889. Dear Sir: I wired Judge Nourse, asking him to postpone the trip to Oskaloosa until next week.   *   *   *   I intend to spend a week in Chicago in August, and if we can secure control of the 'American' I can handle it so you and I will make seventy-five thousand dollars each, as by being in Chicago between the C., R. I. & P. and the C. & N. W. I know how to trade; and you will remember that two miles of track on a level surface would connect the C. &. N. W. with American. H. W. McNeill has written to know if twenty-five cents on the dollar will buy his paper, and, if so, he will take it; but Booth will ask the receiver to let you have it at one hundred dollars over that sum. The thirty thousand stock goes with it and we could try that as the genuine stock and Warren's as the spurious. [Signed]                    J. K. GRAVES."
"Hon. E. Clark, Iowa City."

"Iowa City, July 18, 1890. Hon. J. K. Graves, Dubuque, Iowa: I have your letter of the 15th inst., and noted contents. I have been on the wing since Tuesday. Went to Oskaloosa. Spent the day there, and learned that our parties would not put in an appearance until further arrangements were made; say next week. I learned at Oskaloosa that the edict was recinded banishing you from the great metropolis of the western world, for which I am thankful. Now, I had an interview with Judge Seevers. He thinks, as you do, that we can compass what we started out to do, and we must get a certain interest. I will do my best to get it for you. This part keep entirely to

yourself.   If you think it best, I will meet you, or perhaps it would be best for me to come up.   You know I am scarce of money, but I will borrow to succeed in this matter.   I was in Chicago yesterday.   Came home last night.   I have every assurance I could ask that Cable will deal honorably with us, and give us as good a chance as he will any person in the way of coal trade.   Let me hear from you at once, and I will come up if you think it best.   [Signed] E. Clark."

The answer admits that J. K. Graves owned the shares of the capital stock held by the First National Bank of Chicago; avers that he purchased said stock from said bank on his own account; and denies any agreement or understanding by which he was to advance money, and hold the stock for Graves. Defendant also says that, as to the McNeill claim, and the stock pledged for its security, he purchased the same on his own account, and without any agreement with Graves, as alleged.   Defendant further avers that the only agreement he ever had with J. K. Graves in relation to the stock in question was in writing. After the filing of the second amendment to the petition, setting up the further agreement in writing by letters, the defendant answered, denying the agreement in writing, or that the letters contained such an agreement, or had reference to any agreement heretofore made, and also averred that the agreement alleged by plaintiff could not be established by oral evidence.   On the trial the district court dismissed the petition, and the plaintiff appealed.—*Affirmed.*

*R. W. Stewart* for appellant.

*C. C. & C. L. Nourse* and *Ranck & Bradley* for appellee.

GRANGER, J.—I. A question is presented on an assignment of error as to the refusal of the court to strike from the files defendant's answer, filed after plaintiff's second amendment to the petition was filed. It will be remembered that the second amendment to the petition set up the letters as constituting an agreement in writing, and the answer complained of makes a denial that the letters contain such an agreement, or refer to an agreement before made; and it also stated that the agreement pleaded could not be shown by parol evidence. The grounds of the motion to strike, are that the pleading was filed without leave of court, and later than the rules of the court permitted. We need not determine the correctness of the ruling denying the motion; because, as to the denials of what was shown by the letters, no issue was changed or affected. The pleading of the letters as constituting the contract, if not denied, only went to the fact of the existence of the letters, which is not disputed. There would be no admission of a legal conclusion not deducible from the letters themselves. The denials as to the letters in no way change the situation. Every fact available to the plaintiff without the denials is available with them.

II. As to the plea of the statute of frauds, or, in other words, the plea that parol evidence was not admissible to prove the contract as alleged, that was a mere legal conclusion, and in no way changed the issue. What evidence is competent to prove an issue of fact made by the pleadings is never settled upon an issue of fact as to such competency, but by a demurrer to the pleading averring the contract, or upon objection to the evidence when offered. See *Burden v. Knight*, 82 Iowa, 584 (48 N. W. Rep. 985), wherein it is held that a party claiming under a

contract within the statute of frauds must aver facts
sufficient to take it out of the provisions of the stat-
ute, or the pleading will be demurrable.

III. The deposition of the defendant was taken
and used on the trial. At the commencement of the
trial, and before testimony was offered, the plaintiff
made an application to have the deposition corrected
wherein the stenographer, before whom the deposition
was taken, had omitted certain statements by the wit-
ness. The fact as to the omission was shown by the
affidavit of R. W. Stewart. The application was denied,
and complaint is made. It seems to us it would
be a dangerous rule to permit depositions, where
filed, to be attacked by affidavit with a view to
add to or strike from them. It can readily be under-
stood what issues might be made on such applications,
and what complications might follow. We think the
court did not err in the refusal of the application.

IV. On the merits of the case, we are not in
doubt that the conclusion of the district court is
correct. We reach this conclusion, independent of
the claim that the contract, as alleged, is within the
statute of frauds. That Clark furnished the money
upon which the stock and claim were transferred to
him, is conceded, and, in the absence of a showing to
the contrary, he is the owner. That there are some
items of evidence, not easily reconciled as consistent
with defendant's claim, may, and likely should, be
admitted. They would be of greater force against
defendant, if he had the burden to show his title. The
burden is with the plaintiff, and mere doubts are not
sufficient to make the necessary weight of evidence
for his recovery. It will not unduly lengthen this
opinion, if we set out a part of the evidence that
seems to us to largely control this case. It is a part of
the testimony of J. K. Graves, as follows: "I had
owned and pledged to the First National Bank of

Chicago, $26,400 of Western Union Fuel Co. stock, and $25,000 stock of the American Coal Co. The bank was anxious to get its money, and I was equally anxious to get control of the stocks for plaintiff. I saw Mr. Clark, and asked him if he wouldn't advance the money to get the stocks, and hold the same for the benefit of my son Luin. He said he would do that for me, and that I could do as I pleased with it; but that, if he did so, we would work together for mutual advantage, and oust McNeill. At the same time I also told Clark that Wells, receiver, at Dubuque, held about $12,000 of paper against H. W. McNeill, secured by $30,000 American Coal stock, which with his (Clark's) co-operation, I could buy very cheap—for much less than the actual value of the stock—and Mr. Clark said to me to see what I could do in the way of procuring this McNeill paper from Wells, receiver, and that, if I could make a satisfactory trade, that he (Clark) would let me have the money to pay for it, or would buy it for me, and that he would come up at any time I desired to close the negotiations with Wells, if it might be necessary. He informed me that he would do it for me, but for me to keep that part to myself. I told him I would ascertain what I could accomplish, and let him know, and that I wanted my son Luin to divide with Clark whatever profit was made in the matter. Clark expressed his wish to aid me, and said all he cared for was to be made whole—that is, to have his money back, with interest—and that Luin or I could do as we pleased with the property or profits; and that he would do it for me, but for me to keep that part quiet. I had several talks with Mr. Clark about the American Coal Co. and the Western Union Fuel Co. stocks that spring, and before he bought the Western Union Fuel Co.'s stock of Mr. Gage. (2) At one of these interviews

in his bank at Iowa City, Mr. Clark told me he
wished to sell his stocks, and get out, or co-operate
with me to get control, and get rid of the McNeills,
who managed the business of those companies; that he
would loan me one-half of all he realized from his
coal interests to enable me to liquidate my personal
affairs which were then in confusion. I thanked him
and accepted his generous offer, whereat Clark said:
'Now, Graves, I may die; so you just sit down, and
write out what I have agreed to do. Make it a legal,
binding document, and I will sign it;' and I then and
there wrote out the following, which Clark signed."
The weight and conclusiveness of this testimony is
more apparent if we have in mind what induced Graves
to write the "binding document" to be signed by
Clark. It was these words from Clark: "Now,
Graves, I may die; so you just sit down and write out
what I have agreed to do. Make it a legal, binding
document, and I will sign it." Looking to the testi-
mony of Graves, as above quoted, it appears that the
agreement of Clark, as testified to, included the
agreement as to advancing the money for both the
stock in the bank and the McNeill claim, and the
agreement involved many thousands of dollars. Mr.
Graves prepared, and Mr. Clark signed the following:
"Iowa City, April 20, 1889. J. K. Graves—Dear Sir:
For value received, I agree to work solidly with you
to protect our mutual interests in the coal business
generally at Oskaloosa, and especially in the American
Coal Company; and you and I will vote together, and
build up our interests against any and all influences
and from any funds therefrom coming to me I
will loan you the use of one-half thereof, should you
need the same in liquidation of your affairs. We will
retire W. A. McNeill from all connection with the
business, and aim to make the management profitable
and satisfactory. We, you and I, will stand together,

and, if need be, fight together for each other. Truly, E. Clark." This writing was made April 20, 1889, and was about the time of the agreement as to the transfers in question. It was made at one of the talks about the coal and fuel company's stocks, and before defendant purchased them. The purpose in making the writing was that it might express what Clark had agreed to do in case he should die. With that as the purpose, the agreement is made and signed without a reference to the agreement relied on in this suit. Independent of this particular feature, the evidence is in conflict. The testimony of Graves and Clark is opposed, and both, in some particulars, are corroborated by other testimony; but this feature is so strong in support of Clark, and the burden being with plaintiff, that it does not seem to us a doubt remains as to what the conclusion should be. The letters, pleaded as a further agreement, do not aid the plaintiff. These letters were written July 15 and 18, 1889. The stock seems to have been issued to Clark, in part at least, June 15, 1889, and the negotiations made, in part, before April 29, 1889. The letters speak of Judge Seevers having said that a certain interest should be obtained, and Clark said that he would do his best to help Graves get it, and Graves was admonished to keep that fact entirely to himself. It cannot be understood what was meant by the statements. The inference is rather against than in favor of its meaning the interests involved in this suit. Of course, there are parts of the evidence we do not discuss, nor is it necessary. Our conclusion is that the judgment should be AFFIRMED.