CHESTER B. DOW *v.* JOSEPH H. WORTHEN.

*Statute of Frauds. Agency.*

D. sold to H. a quantity of apples, and sent several barrels more than H. agreed to take, with notice that what H. could not sell, D. would take back. H. afterwards concluded to take all that D. had sent. They then agreed upon the price of the whole, before unsettled, at $75., and that this sum should remain in the hands of H. as part payment for a lot of poultry which D. was then negotiating to pur. chase, and finally did purchase of H. *Held,* that the contract for the poultry was binding within the statute of frauds.

Where an agent becomes personally responsible for goods purchased for his principal, the latter cannot claim that their relations as principal and agent are changed thereby.

ASSUMPSIT for not receiving a lot of poultry which the plaintiff purchased for the defendant as his agent. Plea, the general issue. Trial by jury, June Term, 1863, PECK, J., presiding. The plaintiff gave evidence tending to show that about December 1st, 1861, he was employed by the defendant to purchase a lot of poultry of Hatch & Co. of Strafford, Vt., at certain prices named, if it could not be obtained at less rates ; that after looking at the poultry twice he effected a purchase of it as directed ; that its quality was as good as he represented it to be ; that the bargain was made on Saturday and the poultry was to be moved away on the following Tuesday and Wednesday ; that the bargain was evidenced by no writing, no part

of the poultry was delivered, and nothing was given as earnest, except as herein-after stated.

Said Hatch testified that previous to this bargain he agreed to take ten or twelve barrels of apples of the plaintiff, but the plaintiff sent him twenty barrels, with word that what he could not sell, he would take back; that previous to said first of December, Hatch had sold so many of these apples, that he had concluded to keep the whole twenty barrels; that on the occasion of the plaintiff's looking at the poultry the first time, he told the plaintiff he would take the whole of the apples, and pay him for both what he had sold, and what he had on hand unsold, and that the plaintiff said he need not do so then; that if he should buy the poultry it would be so much paid; that at the time of closing the poultry trade, on Saturday, it was agreed between Hatch and the plaintiff that the account of the plaintiff against Hatch for said apples should apply towards the poultry; that the price was then agreed upon for the apples at $75., and that this was then agreed on as a part payment of the poultry. The plaintiff testified on this point to the same in substance.

Hatch also testified that the plaintiff told him at the time of the trade, that he was purchasing the poultry for the defendant, but that he told the plaintiff that he did not know the defendant, and would look to nobody but the plaintiff, and that it was agreed between them that the plaintiff was to be the person responsible to Hatch & Co. in the contract.

The plaintiff also gave evidence tending to show that he wrote to the defendant on Monday after the trade, informing him of his purchase; that on the day of his trade with Hatch, the weather became warm, and that it continued to thaw until the following Wednesday, and that on Tuesday he received orders by letter from the defendant not to move the poultry during the warm weather; that said poultry remained in Hatch's store until the 18th of December, when, at the request of the plaintiff, the defendant went to Strafford, and saw it, and then refused to take it; that the plaintiff thereupon took it to Boston, and sold it at a loss of $39.62, from the contract price; that the plaintiff never knew or heard that the defendant was purchasing for the Barrons, or any other party, but supposed he was buying on

his own account, until sometime after he, the plaintiff, purchased the poultry.

The defendant gave evidence tending to show that during the last ten years he had been in the employ of Messrs. A. T. & O. S. Barron, of Quechee Village, as agent for the purchase of poultry in a certain district assigned him, including the town of Strafford, and that he acted as such agent of the Barrons in employing the plaintiff, and told the plaintiff so at the time.

There was no evidence in the case tending to show that the defendant in employing the plaintiff to buy poultry, or to buy this poultry, said anything indicating that he was not acting on his own responsibility, except that he told the plaintiff that he was buying it for the Barrons.

Asa T. Barron, of the firm of A. T. & O. S. Barron, was introduced as a witness by the defendant, who testified in substance that they employed several agents to purchase poultry, and assigned each a district, and then would not themselves or by other agents purchase any in that district, and it was understood that if their agents employed sub-agents, they, the Barrons, would not be liable to or responsible for such sub-agents.

The defendant also gave evidence tending to show that this poultry was not so good as the plaintiff represented it to be, or as he, the defendant, instructed him to buy,—which was denied by the plaintiff.

The defendant requested the court to charge the jury that the contract made by the plaintiff with Hatch for the poultry was void under the statute of frauds ; that the agreement to apply the debt due from Hatch to Dow was not such part payment of the price as would answer the provisions of the statute.

The court refused to charge the jury as requested, but charged that if they found the facts in relation to the apples, and the agreement applying the $75. in part payment for the poultry, as stated by Hatch and the plaintiff in their testimony, it was such a part payment as constituted a sufficient compliance with the statute of frauds, provided they found that by the agreement it was treated and understood by the parties at the time of the trade, as a then present payment, but unless they so found, then the contract between Hatch & Co. and

Dow *v.* Worthen.

the plaintiff was not legally binding, and the plaintiff could not recover,—to which the defendant excepted.

The court also told the jury that if they found the facts as testified to by Asa T. Barron, in relation to the defendant's agency, then the evidence tending to show that the plaintiff knew that the defendant was buying poultry for the Barrons, and the evidence as to what the defendant told the plaintiff as to the purchasing of this poultry for the Barrons, would not have the effect to shield the defendant from personal liability in this action,—to which the defendant excepted.

In relation to the question whether the defendant was justified in refusing to take the poultry, on account of the alleged defects in its quality, the court told the jury among other things, that the rule applicable to principal and agent was applicable to this case; that the plaintiff was bound to possess reasonable judgment and skill in the business he undertook, and such skill and judgment as the defendant had reason when he employed him, to suppose he possessed; that if the plaintiff fully and properly exercised it, and in good faith supposed the poultry answered the description of poultry the plaintiff instructed him to buy, and the representations he had made of it, and he made these representations believing them to be true, the defendant would not be justified in refusing to take it, merely because it was not quite up to the standard in quality of that which the defendant told him to buy; but that it might be so inferior as to warrant the jury in coming to the conclusion, that the plaintiff did not possess the requisite skill and judgment, or that he acted in bad faith or negligently, and without sufficient examination and care, and if so, the defendant was not bound to accept it. To this portion of the charge the defendant excepted.

*S. M. Gleason* and *C. W. Clark,* for the defendant, cited Brown on Frauds, § 341; *Smith* v. *Surnam,* 6 B. & C. 561; *Archer* v. *Zeh,* 5 Hill, 200; *Walker* v. *Mussey,* 16 M. & W. 302; *Gilman* v. *Hill,* 36 N. H. 11; Chitty on Cont. 349; 2 Pars. on Cont. 333.

*D. C. Denison,* for the plaintiff, cited *Green* v. *Merriam,* 28 Vt. 801; *Kittredge* v. *Sumner,* 11 Pick. 50; Chitty on Cont. pp. 376, 396, 397; 1 Smith's Lead. Cas. 377 and 334; Story on Agency, §§ 182, 183, 186.

ALDIS, J. 1. The part payment required by the statute of frauds, in order to make the contract for the sale of goods of the value of over $40. binding on the parties, does not require the actual passing of *money* from the vendee to the vendor. But it must be of *value*—money's worth—and it must be agreed by both parties at the time that the value is then actually passed from the vendee to the vendor—that it is a then present payment. It is not enough for the parties to agree that it *shall be* applied as payment. That would be merely an agreement to pay. It must not rest in agreement,—it must be *pay down*. The payment must be actually made and both parties must so understand it ;—the vendee that he pays and the vendor that he receives the value, and thus that the title to the value has passed from the vendee to the vendor.

In *Walker* v. *Mussey*, 16 Mees. & Wels. 302, it was verbally agreed that the debt that the vendee owed the vendor of four pounds "should go in part payment" to the vendor for the leather. This was an *agreement* to apply the amount in payment—but it was not payment. As Parke, Baron, says, " no evidence was given of the actual payment or discharge of the debt—all rested in agreement merely. If the contract had been that the parties were to be put in the same situation at that time as if the plaintiff's debt to the defendant had then been paid, the statute might have been satisfied without any money having passed in fact."

*Archer* v. *Zeh*, 5 Hill, 200, stands on the same ground. Zeh agreed he would credit or indorse on the note the amount Archer would promise to pay ; but the court held this did not extinguish the debt from McDuffie to Zeh and was not a payment, or an agreement for absolute credit. Judge COWEN's remark that " even if there had been an agreement for absolute credit, I should doubt whether the statute would be satisfied without something more," was not the statement of the principle of the decision, and must be regarded only as the expression of a doubt by that learned judge. There is nothing in Browne on the statute of Frauds, chap. 16, p. 357, inconsistent with the doctrine which we have here suggested as the true rule of the law.

The statute only requires actual part payment. It does not require that such payment shall be shown by writing—by an indorsement, a

credit or a receipt, or by the manual delivery of any article or property of value. It leaves the parties to prove payment by such proof as they may have ;—but it does require proof of *payment*, and not of a mere *agreement to pay* or to apply in payment.

Applying this principle to this case we find no error in the decisions of the county court. The evidence clearly tended to prove actual part payment at the time the contract for the poultry was made. The case shows that both parties " treated the $75. as so much *already* paid upon the price of the poultry—that this was then agreed on as a part payment of the poultry." And the court held and so charged that the jury must find that both parties then agreed and treated the $75. " *as a then present payment.*" If this was found then Hatch & Co.'s liability to the plaintiff for the $75. was extinguished—paid. If Hatch & Co. had refused to deliver the poultry the plaintiff could not have sued them on the contract for the apples to recover the $75. ;—but only for the $75. as money paid on the contract for the poultry.

But we do not consider it necessary, even in deciding this case, to hold that a mere antecedent debt agreed to be paid and extinguished at the time and so actually paid, would be part payment so as to satisfy the statute, in the entire absence of any act done to evidence the fact of payment, such as an endorsement, a credit, a receipt,—a giving up of the evidence of the debt. For here the parties settled their unsettled dealings about the apples ; the plaintiff sold those on hand to Hatch & Co. ; they agreed upon the price of the whole, (before unsettled,) at $75., and agreed that this should remain in the hands of Hatch & Co. as payment for the poultry. This was something more than a mere agreement as to an antecedent debt—it was a settlement and actual transfer of the title of property already delivered. This in the judgment of a part of the court is an important element in the case, and sufficient alone to determine it.

2. The plaintiff was merely the defendant's agent in buying the poultry, and was bound only to the duty and liability of an agent. The rule on this point we think was very clearly and properly laid down by the judge in his charge.

The fact that the agent saw fit to become responsible to Hatch & Co. for the amount of the purchase—they being unwilling to trust

his principal—does not change the relation of the parties. The act in no way interfered with or impaired the principal's rights. So long as the agent did not see fit to make any claim upon the ground that he had become responsible for the price, but still recognized his agency notwithstanding he had thus become liable, it was not for the defendant to claim that such a voluntary favor for his benefit should change their relation and make the plaintiff a purchaser from Hatch & Co., and a vendor to him.

The judgment is affirmed.