In the Matter of the Estate of Franklin Moore. Appeal of James S. P. Hatheway.

*Estates of decedents—Partner's liability for special deposit.*

1. The estate of a deceased partner is not liable for the amount of bonds left without his knowledge in the hands of other members of the firm as a special deposit, when it was no part of the firm's business to receive such deposits.

2. The issue upon presentation of a claim before probate commissioners continues the same on appeal to the circuit court and is governed by such evidences of the claim as were filed with the commissioners.

3. Statements made by persons who have been partners but after the firm has dissolved and its debts have been assumed by another member, are immaterial in seeking to show the liability of a non-consenting partner for bonds specially deposited, the firm not having been organized to receive such deposits and getting no profit from them.

4. Where a claim against an estate is for a special deposit of a quantity of government and state bonds with a firm of which decedent was a

member, testimony is fatally defective, which, while tending to show the deposit of bonds, does not identify their character.

5. The fact that a business firm, not organized for banking purposes, was in the habit of receiving an individual's money and allowing him interest on it does not tend to show that it was his depositary of securities.

Error to Wayne. (Full Court.) Oct. 23–26.—Dec. 20.

Appeal from rejection of claim by probate commissioners. Claimant appeals. Affirmed.

*Norris & Uhl* for appellant.

*Cutcheon, Crane & Stellwagen* and *G. V. N. Lothrop* for appellee. No recovery can be had against the estate of a partner for the amount of a special deposit left with the firm unless there is evidence that the firm, as such, received the deposit and lost it by negligence : *Foster v. Essex Bank* (1821) 17 Mass. 479,; *Exp. Eyre* (1842) 1 Phil. Ch. 27 ; *Giblin v. McMullen* (1868) L. R. 2 P. C. 317; *Smith v. Westfield Bank* 99 Mass. 605 ; *Pitlock v. Wells* (1872) 109 Mass. 452 ; *Scott v. Chester Valley Bank* 72 Penn. St. 471; *Dudley v. Camden Ferry Co.* 42 N. J. L. 25 ; *Comp v. Carlisle Deposit Bank* 94 Penn. St. 409 ; and if bonds deposited were fraudulently abstracted by members of the firm the partner's knowledge of that fact must be shown : *Goodman v. White* (1852) 25 Miss. 163 ; *Taylor v. Jones* (1860) 42 N. H. 25; *Graham v. Meyer* (1868) 4 Blatch. 129 ; and that he assented : *Mercein v. Mack* (1833) 10 Wend. 463 ; *Wilson v. Williams* (1835) 14 Wend. 146; *Barnard v. Lapeer* (1859) 6 Mich. 274; *Heffron v. Hanaford* (1879) 40 Mich. 305 ; admissions of his co-partners in regard to matters not belonging to firm business can not bind him : *Hotchin v. Kent* 8 Mich. 526.

CAMPBELL, J. Hatheway, as executor and residuary legatee of Gilbert Hatheway deceased, presented a claim against the late firm of Moore, Foote & Co., before the commissioners on Moore's estate, under § 4438 of the Compiled

52 MICH.—8

Laws of 1871, [How. St. § 5906] authorizing proof of lia-
bilities under joint contracts to be made against the estates
of deceased joint contractors.  The claim was rejected by
the commissioners, and also on appeal, the circuit judge
ruling that no case was made out.   Error is now brought on
the rulings at the circuit.

The case stands on the same footing with an action on
joint contract, and the principal questions on the trial related
to such a controversy.   Moore, Foote & Co., consisting of
Franklin Moore, George Foote and George Frederick Bag-
ley, did business from 1864 to 1874, having been associated
originally under written articles for the purpose of becoming
wholesale dealers in groceries and provisions, Bagley being
the financial manager, Foote the general business manager,
and Moore, the largest contributor, being exempt from per-
sonal management as far as he chose.

Gilbert Hatheway had dealings with the firm, and was in
the habit of leaving considerable money balances in their
hands, subject to his order, and drawing interest.   He had
also had at different times packages of bonds deposited
specially in Detroit banks, which claimant relies on as indi-
cating dealings with Moore, Foote & Co., under which they
were liable as bailees.   The present contest arises out of a
claim that one or more packages of bonds were held by
Moore, Foote & Co. for Gilbert Hatheway when he died,
and have not been returned to his estate.

As the issue in the circuit is necessarily the same as before
the commissioners, and was here, in fact, precisely the same
without framing new allegations, the document filed with
the commissioners, will determine the basis of the action.
It was as follows:

"To one or more packages of U. S. and Michigan State
coupon bonds, deposited in the life-time of said Gilbert by
him with the late firm of Moore, Foote & Co., and remain-
ing in the custody of said firm at the date of his death,
Oct. '71, not delivered to his executor nor to his order, nor
to any one authorized to receive them. Value estimated
$50,000."

This claim is for a bailment by deposit of specific securi-

ties to be returned in the same shape as deposited. It is a simple and single form of liability as stated. And the only question presented is whether the firm as a firm ever received such a deposit to be re-delivered, and became legally in the wrong for non-delivery. The obligation relied upon is not a separate one of the decedent, but one which bound him, if at all, as a liability of the partnership on a partnership contract.

As the court below held there was no testimony in support of the claim, some dates may become material. Gilbert Hatheway died in October, 1871, and appellant became his representative in December of that year. Moore, Foote & Co. dissolved partnership in 1874. Both Moore and Bagley died in January, 1877. Foote is living.

There was no testimony tending to prove that Moore had any personal share in receiving or dealing with the bonds referred to, or that he had knowledge of their reception. If bound it must be because the transaction came within the implied powers of the various partners as representing the firm.

There was no testimony showing that the books of the firm contained reference to such a transaction, and no receipt or voucher was produced. Neither was any evidence produced in any shape from the documents of Gilbert Hatheway's estate which tended to show the deposit of such securities as in Moore, Foote & Co.'s hands at his death. Claimant's testimony consisted chiefly of facts connected with the money dealings and special deposits of Gilbert Hatheway, and of statements of Bagley and Foote after his death.

It was shown that after Gilbert Hatheway's death claimant had conversations with Bagley and one or more with Foote in which it was said that there were then bonds to a large amount in the hands of the firm. Nothing was said concerning the character of these bonds as government or State bonds, and if all the conversations are taken together it might be inferred that they referred to supposed deposits in some bank or banks in Detroit. But if these conversa-

tions were enough to create a liability such as is claimed, it would have been for the jury to pass upon the testimony. There was some evidence of conversations in 1875 with Bagley which, taken together, do not indicate anything more than a supposition of special deposits in bank; but these would not be material because made after dissolution and when Moore had assumed all the debts.

It cannot be claimed that these conversations, alone or together, could make out a liability such as was urged before the commissioners. The partnership was not organized for or used for banking or deposit purposes, and the reception of special deposits of securities for safe-keeping could not be of any profit or service to the firm. No partner not consenting to such arrangements could be bound by them. But this testimony is also fatally defective standing alone, because it does not identify any kind of bonds, while the claim filed is for government and State bonds.

We do not think the testimony of the previous dealings helps it out. The fact that the firm received money for Hatheway and kept it subject to his order, and allowed him interest on it, had no tendency to show that it was his depositary of securities. The correspondence introduced by claimant tends rather in the other direction as showing dealings under specific instructions with bonds not in the hands of the firm, and credit in each instance given for money or its equivalent received, but in no case referring to disposals of bonds or other securities dealt with except under orders.

The testimony concerning the packages of bonds which were from time to time deposited in banks is undisputed to the effect that they were all deposited as Hatheway's bonds, which he could himself control. This is not consistent with any theory of a bailment or deposit with the firm, but shows that any action by them or by any of them which was had, or which could have been lawfully had, was merely that of having them taken back and forth for Hatheway's convenience to and from the bank where they were kept. It cannot be seriously claimed that this was firm business

or that it made the firm Hatheway's depositary. And Moore is not shown by any testimony in the case, and could not have been shown by any testimony excluded, to have had any knowledge of or concern in these accommodation arrangements.

In our opinion nothing in the case, and nothing which the excluded testimony might have brought into it, tended to show that Moore, Foote & Co., in the course of business ever received on deposit the bonds claimed or any bonds.

And we think the case was properly taken from the jury and that the action of the circuit should be affirmed with costs, and the conclusion certified accordingly.

The other Justices concurred.