FIRST NATIONAL BANK OF SHAKOPEE v. H. BURTON STRAIT, Administrator.[1]

June 19, 1896.

Nos. 9871, 9948—(93, 94).

**Dissolution of Firm—Declarations of Partner.**

After the dissolution of a partnership, the acts or admissions of one partner are not admissible in evidence against his former co-partners, unless assented to or authorized by them.

**Same—Admission of Evidence.**

Rule applied, and *held*, that the trial court erred in admitting evidence of the acts and admissions of one partner, done and made after a dissolution

[1] Reported in 67 N. W. 987.

of the firm, for the purpose of establishing a charge of fraud made by the plaintiff against the former co-partner.

Action in the district court for Scott county. The jury rendered a verdict in favor of plaintiff for $7,368. Defendant made a motion for a new trial on the ground that the verdict was not justified by the evidence and for errors of law, and afterwards made a second motion for a new trial on the ground of misconduct of the prevailing party, accident or surprise, and newly-discovered evidence. From orders, Cadwell, J., respectively denying said motions, defendant appealed. First order reversed. Second order affirmed.

*W. C. Odell, Southworth & Coller, and Warner, Richardson & Lawrence*, for appellant.

*Chas. G. Hinds* and *Henry Hinds*, for respondent.

START, C. J. On October 13, 1885, Horace B. Strait, the defendant's intestate, David L. How, George F. Strait, and Robert Lusk were partners in the flour-milling business, under the firm name of George F. Strait & Co., at Shakopee, in this state. They had been such partners for more than five years prior to that date. George F. Strait died May 30, 1887; Robert Lusk, on March 28, 1893; David L. How, on December 22, 1893; and Horace B. Strait, on February 25, 1894. All of the parties died intestate and insolvent, except Horace B. Strait, who died intestate and solvent; and the defendant, H. Burton Strait, is the administrator of his estate. Horace B. Strait and David L. How were on October 1, 1883, and thereafter, as long as they respectively lived, directors of the plaintiff bank; the former being its president from that date to January 1, 1892, and the latter its cashier until the day of his death.

On and prior to October 13, 1885, the plaintiff held and owned a promissory note made by George F. Strait & Co. for the sum of $10,-000, and on that day a note for the same amount, due January 1, 1886, was given in its place, signed by George F. Strait & Co. Five days thereafter, and on October 18, 1885, the flour mill of the firm was destroyed by fire. Before the maturity of this renewal note, it was stamped on its face with the words: "First National Bank. Paid Nov. 28, 1885." But it has remained ever since in the possession of the bank. Interest has been paid and indorsed upon it to January 1, 1887. This is the last indorsement on the note prior to the death

of George F. Strait. October 27, 1887, there was paid on the principal $5,000. The interest is indorsed as paid to July, 1890, on the note, in the handwriting of How.

The plaintiff claims that How and Horace B. Strait concealed from its board of directors, and from it, the fact that the original note was renewed, instead of being paid; that they falsely stamped the renewal as paid, and fraudulently concealed from the bank the fact that the note had not been paid, and that each of them, knowing that their own debt to the plaintiff had not been paid, failed to notify the plaintiff of its nonpayment; that it did not discover the facts constituting such alleged fraud until the year 1894. By this action it seeks to recover against the estate of Horace B. Strait, on account of such alleged fraud, an amount equal to the balance due on the note. The defense is: (1) Payment; (2) the statute of limitations. The plaintiff had a verdict, and the defendant made a motion for a new trial on the ground that the verdict was not justified by the evidence, and for errors of law. This motion was denied. Subsequently the defendant made a second motion for a new trial on the ground of newly-discovered evidence. This motion was also denied, and the defendant appeals from each of the orders.

The assignments of errors raise three general questions: (1) Did the trial court err in the admission of evidence? (2) Did it err in its instructions to the jury? (3) Is the verdict justified by the evidence?

The assignments of error as to the rulings of the trial court on the admission of evidence are numerous,—some 70 in all,—but we are of the opinion that no substantial or prejudicial error was committed in receiving evidence of the acts and admissions of How, and of the papers and records of the bank relating to the note in question, which were made or done prior to the dissolution of the firm of George F. Strait & Co., on May 30, 1887, by the death of George F. Strait. The burden was on the plaintiff to establish its allegations of fraud. Where fraud is the issue, great latitude in the admission of evidence is permissible, for it is seldom that it can be established by direct evidence. In proving its case, the plaintiff, of necessity, was obliged to resort to indirect and negative evidence, in order to prove that the note had not been paid, and that its nonpayment had been concealed from the bank. Therefore evidence of the customary course of business of

the bank, as to entries in its books and records when a note was received and when it was paid, in connection with evidence of the existence or absence of such entries as to this particular note, was competent and material. The inventories made by the bank were competent and material evidence, for they tended to characterize the possession of the note by the bank after it had been stamped "Paid," and to show that the bank did not hold it as bailee of a canceled note, but as an asset of the bank.

But the evidence of the acts and admissions of How after the partnership was dissolved by the death of George F. Strait, which was received over the objection and exception of the defendant, was incompetent; and its reception was prejudicial error, for which a new trial of this case must be granted.

The destruction of the flour mill of George F. Strait & Co. did not per se, as claimed by the defendant, dissolve the firm. It was not organized to operate this particular mill, but it was dissolved by George F. Strait's death, May 30, 1887. It may be conceded that each partner is liable for the fraud of any member of the partnership with reference to the business or affairs of the partnership. It does not, however, follow from this that after the dissolution of the partnership the acts and admissions of one of the partners are admissible against his former co-partners. Whatever may be the rule in other jurisdictions, it is the settled law of this state that after the dissolution of a partnership the acts or admissions of one partner are not admissible against his former co-partners, unless assented to or authorized by them. Whitney v. Reese, 11 Minn. 87 (138); National Bank of Commerce v. Meader, 40 Minn. 325, 41 N. W. 1043.

The trial court received evidence, material portions of which were admitted against the defendant's objections and exceptions, tending to show that How, after the dissolution of the firm, and in April, 1893, wrote into plaintiff's register of bills receivable two entries indicating that the bank held a note against O. C. Hartman for $1,-500, dated October 20, 1893, and one against M. K. Armstrong for $3,000, dated April 4, 1893; that in October, 1893, How made out, and placed in a pocketbook where the bills receivable of the bank were kept, two memoranda (plaintiff's Exhibits 2 and 3) indicating that the supposed Hartman and Armstrong notes had been sent to Duluth and St. James, respectively, for collection; that the bank

never in fact had any such notes; and that Exhibits 2 and 3 were mere dummies. The assistant cashier made a memorandum of these dummies (plaintiff's Exhibit 6), and showed it to How a day or two before the latter's death, on December 28, 1893, who then wrote on the memorandum to the effect that Exhibits 2 and 3 were carried as a part of the George F. Strait & Co. loan. These exhibits, and also How's written explanation, were received in evidence, the defendant objecting and excepting thereto. The assistant cashier testified that he is pretty certain he showed Exhibits 2 and 3 to Horace B. Strait a day or two before he showed them to How, but he also testified that he never exhibited the memorandum to Strait after How's explanation had been written thereon, and we find no evidence in the record which would justify the conclusion that Strait knew Exhibits 2 and 3 were fictitious.

This evidence of the acts and admissions of How after the dissolution of the firm was of the most prejudicial character, and was clearly incompetent as against the defendant. It was simply the written admission of How, wholly disconnected with any act, that the dummies previously fabricated by him related to the note in question in this case. It is unnecessary to discuss this evidence, or comment on the conduct of How. The charge made by the plaintiff against defendant's intestate was a serious one, for it involved the honor and estate of a dead man. All of the makers of the note in question were dead before the claim was made. In view of these circumstances, the rules of evidence must be adhered to with reasonable strictness.

The plaintiff seeks to justify the admission of the evidence to which we have referred on the ground that it related to the time, manner, and circumstances of the discovery of the fraud. The argument made by plaintiff's counsel in support of this claim is able, but specious. While it was necessary for the plaintiff to show that its action was brought within six years next after the discovery of the alleged fraud, yet it could not, under this mask, introduce evidence manifestly incompetent and prejudicial. This evidence would have been competent on the issue of fraud, if the action had been against How's estate, instead of Strait's; but, as against the latter, it was not competent on that issue. When the written admission of How, made two days before his death, to the effect that Exhibits 2 and 3

were carried as a part of the George F. Strait & Co. loan, was offered in evidence, and was objected to by defendant, counsel for the plaintiff, in response to the inquiry of the court as to the purpose of the evidence, replied, "Simply as one of the modes adopted for concealing the frauds that had previously been committed, and that being simply an explanation that it was for that purpose." That is, it was simply one of How's modes, adopted years after the dissolution of the partnership, to conceal the fraud he had committed and his admission that his act in question was for that purpose. It is apparent from this that the real object and purpose for which this evidence was offered and received were not to fix the time when the bank first discovered the alleged fraud, but to charge the fraud upon Strait by the acts and admissions of How.

It is also claimed that this evidence was admissible on the ground that How was the decedent's agent for the settlement of the partnership affairs. The claim is not regardable, for, while the business of settling up the business of the partnership was left with How, his acts and admissions received in evidence were not connected with any settlement of the affairs of the firm, or within the scope of his agency express or implied.

Inasmuch as there must be a new trial for error in the admission of evidence, we deem it unnecessary to discuss the remaining questions raised by the defendant on this appeal. It would serve no practical purpose to do so, as the evidence on the next trial may not be identical with that given on the first trial.

With reference to another trial, we deem it proper to say that we are of the opinion that the district court obtained jurisdiction of the parties and the subject-matter of this action by appeal from the probate court, and by the defendant answering the complaint and going to trial without objection, even if it be true, as claimed by the defendant, that the plaintiff's demand is founded in tort, and therefore could not have been allowed by the probate court.

The defendant's second motion for a new trial, on the ground of newly-discovered evidence, was properly denied, and the order denying it is affirmed. The order denying defendant's first motion for a new trial is reversed, and a new trial granted.